JUDY F. ADAMS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Adams v. Commissioner
Docket Nos. 42256-86, 42257-86[1]
United States Tax Court
T.C. Memo 1990-38; 1990 Tax Ct. Memo LEXIS 38; 58 T.C.M. (CCH) 1261; T.C.M. (RIA) 90038; January 22, 1990
Judy F. Adams, pro se. Janice C. Taylor, for the respondent. RUWE
MEMORANDUM OPINION RUWE, Judge: This matter is before the Court on respondent's motion for summary judgment. *38 In two separate notices of deficiency respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Docket No. 42256-86
Addition to Tax
Year
Deficiency
Sec. 6653(b) [2]
1977
$ 4,514.67
$ 2,257.34
1978
4,459.74
2,229.87
1979
4,265.22
2,132.61
*39 Docket No. 42257-86
Addition to Tax
Year
Deficiency
Sec. 6653(b) [3]
1980
$ 26,773.60
$ 13,386.80
1981
17,751.00
8,875.50
*40 Additions to Tax
Year
Deficiency
Sec. 6653(b)(1)
Sec. 6653(b)(2)
1982
$ 27,341.00
$ 13,670.50
50 percent of
the interest due
on $ 27,341.00.
Respondent's motion for summary judgment raises the following issues: (1) Whether petitioner underreported her income for taxable years 1977 through 1979, and failed to report income for taxable years 1980 through 1982; and (2) whether petitioner is liable for the additions to tax for fraud, as determined by respondent, for the taxable years 1977 through 1982. During the taxable years in issue, petitioner resided in Metairie, Louisiana, and was married to Theodore J. Adams. Petitioner filed joint Federal income tax returns for taxable years 1977 through 1979. Neither petitioner nor her husband filed Federal income tax returns for taxable years 1980 through 1982. On October 28, 1986, petitioner timely filed her petitions in these cases. [4] In his answers, respondent denied substantive allegations of the petitions and affirmatively alleged that petitioner's underpayments of tax for taxable years 1977 through 1982 were due to fraud and that petitioner is liable for the additions to tax under *41 section 6653(b). In his amended answers, respondent alleged as an alternative to fraud that petitioner is liable for the additions to tax under sections 6651(a)(1) for failure to file timely returns for each of the taxable years, 1977 through 1982, and for intentional disregard of rules and regulations under section 6653(a) for taxable years 1977 through 1980 and under sections 6653(a)(1) and (2) for taxable years 1981 and 1982. On November 29, 1988, respondent served upon petitioner a 38-page, 147-paragraph request for admissions pursuant to Rule 90. The requested admissions are set forth in full as Appendix A to this opinion. On that same day, respondent also served upon petitioner interrogatories, pursuant to Rule 71, that required petitioner to explain fully the requested admissions that she denied. Additionally, on December 14, 1988, respondent served upon petitioner a request for production of documents pursuant *42 to Rule 72. Petitioner failed to respond to any of the discovery requests employed by respondent. As a result, on January 17, 1989, respondent filed a motion to compel production of documents. We granted respondent's motion, on January 25, 1989, and ordered petitioner to produce the requested documents for respondent on or before February 10, 1989. Petitioner failed to produce the requested documents. On February 21, 1989, respondent filed a motion to impose sanctions upon petitioner for failure to comply with our order. On February 24, 1989, petitioner filed a motion to continue. On March 13, 1989, we held a hearing on both motions in New Orleans, Louisiana. Petitioner was present at the hearing. She indicated that she wished to be represented by her husband, Theodore J. Adams, who is a Louisiana attorney and was also present at the hearing. Mr. Adams has not been admitted to practice before this Court. See Rule 200. We informed petitioner and Mr. Adams that we would recognize Mr. Adams as counsel for petitioner provided that he apply for admission before this Court and enter a written appearance in these cases. See Rule 24(a). Subsequent to the hearing, Mr. Adams has *43 not sought admission to practice before this Court nor has he entered an appearance. At the hearing, Mr. Adams argued that these cases should be continued because his health was impaired, which rendered him unable to adequately prepare for trial. Based upon representations that Mr. Adams would enter an appearance on behalf of petitioner and apply for admission before this Court, we granted petitioner's motion to continue. We held respondent's motion for sanctions under advisement. At the March 13, 1989 hearing, we advised petitioner and Mr. Adams that petitioner had failed to respond to any of the discovery requests and that there were substantial and detailed facts deemed admitted. We questioned how petitioner intended to proceed in light of the admissions, but received no satisfactory answer. On August 30, 1989, respondent filed a motion for summary judgment, pursuant to Rule 121. In his motion, respondent asks for a summary adjudication in his favor of all the issues in controversy. By Court order, dated September 1, 1989, we ordered petitioner to file on or before October 6, 1989, a response to respondent's motion. Petitioner has failed to file her response. *44 Rule 121(b) provides that a decision may be rendered on a motion for summary judgment if it is shown "that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." The factual materials and the inferences drawn from such materials must be considered in a light most favorable to the party opposing the motion. Naftel v. Commissioner, 85 T.C. 527, 528-529 (1985); Gauntt v. Commissioner, 82 T.C. 96 (1984); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). Respondent, as the moving party, has the burden of proving that no genuine issue exists as to any material fact, and that he is entitled to judgment as a matter of law. Marshall v. Commissioner, 85 T.C. 267, 271 (1985); Naftel v. Commissioner, supra at 529; Gulfstream Land & Development Corp. v. Commissioner, 71 T.C. 587, 596-597 (1979). The first issue for decision is whether we should grant respondent's motion for summary judgment as to the income tax deficiencies for the taxable years 1977 through 1982. In his first notice *45 of deficiency, respondent determined that petitioner underreported her income by $ 20,888.00 in 1977, $ 22,198.00 in 1978, and $ 25,397.00 in 1979. In his second notice of deficiency respondent determined that petitioner failed to report income of $ 78,906.50 in 1980, $ 64,465.00 in 1981, and $ 94,056.00 in 1982. The facts in the instant case are established through respondent's unanswered request for admissions that were served on petitioner on November 29, 1988. Because petitioner failed to respond to respondent's request for admissions, the facts set forth therein are deemed admitted and conclusively established. Freedson v. Commissioner, 65 T.C. 333, 335-336 (1975), affd. 565 F.2d 954 (5th Cir. 1978); Morrison v. Commissioner, 81 T.C. 644 (1983); Rule 90(c) and (f). Based upon petitioner's deemed admissions which are contained in Appendix A and include deemed admissions of the amounts of the deficiencies for each year in issue, we find that no genuine issue of material fact exists as to respondent's deficiency determinations. See Marshall v. Commissioner, supra at 272-273. Accordingly, we grant respondent's *46 motion for summary judgment as to the amount of income tax deficiencies set forth in his deficiency notices. The next issue for decision is whether we should grant respondent's motion for summary judgment as to the additions to tax for fraud under section 6653(b) for the taxable years 1977 through 1982. Respondent bears the burden of proving by clear and convincing evidence that petitioner is liable for the additions to tax for fraud. Sec. 7454(a); Rule 142(b). An underpayment of tax is due to fraud only when the taxpayer intentionally violates a known legal duty, with a specific purpose to evade a tax known or believed to be owing. Wright v. Commissioner, 84 T.C. 636, 639-644 (1985); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Where fraud is determined for more than one taxable year, respondent must show that some part of the underpayment for each year was due to fraud. Professional Services v. Commissioner, 79 T.C. 888, 930 (1982); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). The existence of fraud *47 is a question of fact to be resolved upon consideration of the entire record. Rowlee v. Commissioner, supra; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th. Cir. 1978). Fraud is never presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may be proven, however, through circumstantial evidence since direct evidence of the taxpayer's intent is rarely available. Spies v. United States, 317 U.S. 492 (1943). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Rowlee v. Commissioner, supra; Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). Respondent may rely on deemed admissions to prove fraud. Marshall v. Commissioner, supra at 272-273; Doncaster v. Commissioner, 77 T.C. 334, 336-337 (1981); see Rule 90(f). Respondent relies upon petitioner's deemed admissions in meeting his burden of proof that petitioner's underpayments of tax for the taxable years 1977 through 1982 were due to fraud. Based upon petitioner's deemed *48 admissions contained in Appendix A, which include deemed admissions that the deficiencies for each year are due to petitioner's fraud, we find that respondent has met his burden of proof. During all of the taxable years in issue, petitioner failed to maintain books and records of her income-producing activities. Such conduct constitutes a significant indicia of fraud. Otsuki v. Commissioner, supra at 109-110. Petitioner understated her income for taxable years 1977 through 1979, and failed to file returns for taxable years 1980 through 1982. For six consecutive years, petitioner has established a pattern of either underreporting or failing to report her income. Such conduct is strong evidence of fraud. Otsuki v. Commissioner, supra at 107-108. Moreover, petitioner was aware of her requirement to file Federal income tax returns, and her failure to do so for taxable years 1980 through 1982 is further evidence of fraud. Castillo v. Commissioner, 84 T.C. 405, 409 (1985). We also find significant, petitioner's conduct through the proceedings in these cases. During discovery, petitioner ignored respondent's discovery *49 requests by failing to respond to his request for admissions, interrogatories, and request for production of documents. We ordered petitioner to produce the requested documents for respondent. Petitioner failed to comply. In spite of her conduct, petitioner moved for a continuance after respondent moved to impose sanctions. We granted petitioner's motion for continuance in order to allow her husband to apply for admission before this Court and file an entry of appearance so that he might represent her. Petitioner's husband has failed to do either. After respondent filed his motion for summary judgment, we ordered petitioner to file a response. She has failed to do so. This conduct illustrates petitioner's lack of good faith. Stringer v. Commissioner, 84 T.C. 693, 715-716 (1985), affd. without published opinion 789 F.2d 917 (4th Cir. 1986). Accordingly, based on this record, respondent's motion for summary judgment will be granted as to both the deficiencies and the additions to tax for fraud as set forth above. Finally, petitioner alleged for each of the taxable years in issue that the period of limitations for assessment had expired. We *50 have found that petitioner's underpayments of tax for taxable years 1977 through 1982 were due to fraud. The period of limitations, therefore, does not prohibit the assessment of the tax. Sec. 6501(c). Appropriate orders and decisions will be entered. [5]
APPENDIX A Respondent's Request For Admissions Which Have Been Deemed Admitted. 1. Attached hereto and marked as Exhibit A is an authentic copy of the federal income tax return filed by the petitioner for the taxable year 1977. 2. Attached hereto and marked as Exhibit B is an authentic copy of the federal income tax return filed by the petitioner for the taxable year 1978. 3. Attached hereto and marked as Exhibit C is an authentic copy of the federal income tax return filed by the petitioner for the taxable year 1979. 4. Attached hereto and marked as Exhibit D is an authentic copy of the form 872 Consent to Extend Time executed by petitioner on March 15, 1982 [for taxable year 1978]. 5. Attached hereto and marked as Exhibit E is an authentic copy of the form 872 Consent to Extend *51 Time executed by petitioner on August 10, 1983 [for taxable years 1977 and 1978]. 6. Attached hereto and marked as Exhibit F is an authentic copy of the form 872 Consent to Extend Time executed by petitioner on or before April 3, 1984 [for taxable years 1977 and 1978]. 7. Attached hereto and marked as Exhibit G is an authentic copy of the form 872 Consent to Extend Time executed by petitioner on or before June 14, 1985 [for taxable years 1977, 1978, and 1979]. 8. Attached hereto and marked as Exhibit H is an authentic copy of the notice of deficiency dated July 29, 1986, mailed to petitioner pertaining to deficiencies in taxes for the taxable years 1977, 1978, and 1979. 9. Attached hereto and marked as Exhibit I is an authentic copy of the notice of deficiency dated July 29, 1986, mailed to petitioner, Judy F. Adams, pertaining to deficiencies in taxes for the taxable years 1980, 1981, and 1982. 10. During the period December 31, 1976, through December 31, 1982, petitioner and her husband resided at 110 Holly Drive, Metairie, LA.
11. Petitioner and Theodore J. Adams were never legally separated during the period December 31, 1976, through December 31, 1982. *52 12. Petitioner did not have in force and effect during the period December 31, 1976, through December 31, 1982, any contract or agreement which purports to modify the community property regime established under the law of the State of Louisiana. 13. On her joint returns filed for taxable years ended December 31, 1977, December 31, 1978, and December 31, 1979, petitioner claimed dependency exemptions for her daughters, Leigh and Jennifer. 14. Neither petitioner, nor Theodore J. Adams, filed form 1040 U.S. Individual Income Tax Return for the taxable year ended December 31, 1980. 15. Neither petitioner, nor Theodore J. Adams, filed form 1040 U.S. Individual Income Tax Return for the taxable year ended December 31, 1981. 16. Neither petitioner, nor Theodore J. Adams, filed form 1040 U.S. Individual Income Tax Return for the taxable year ended December 31, 1982. 17. As of December 31, 1976, petitioner's cash on hand was not in excess of $ 50. 18. During the period December 31, 1976, through December 31, 1982, petitioner nor her husband maintained books or records of their receipts and disbursements other than check book registers and statements of account received from *53 financial institutions where petitioner and her husband maintained checking accounts. 19. During the period December 31, 1976, through December 31, 1982, Theodore J. Adams, was self-employed as a construction contractor. 20. During the period December 31, 1976, through December 31, 1982, petitioner nor Theodore J. Adams maintained ledgers of receipts or disbursements pertaining to Theodore J. Adams' self-employment as a construction contractor. 21. During the period December 31, 1976, through December 31, 1982, petitioner, Judy F. Adams, was employed as a real estate agent. 22. During the period December 31, 1976, through December 31, 1982, petitioner did not maintain ledgers of receipts or disbursements pertaining to Judy F. Adams' employment as a real estate agent. 23. During the taxable year ended December 31, 1977, petitioner Judy F. Adams maintained a checking account number XXXX-X1-276 at the First National Bank of Commerce. 24. During 1977, in each of the following months, the following amounts were deposited into First National Bank of Commerce checking account number XXXX-X1-276: January
a.
$    697.65
b.
645.32
February
c.
650.00
d.
355.00
March
e.
100.00
f.
525.00
g.
800.00
h.
800.00
i.
150.00
April
j.
600.00
k.
700.00
l.
500.00
m.
300.00
May
n.
500.00
o.
350.00
p.
150.00
June
q.
270.00
r.
200.00
July
s.
3,000.00
t.
300.00
August
u.
100.00
v.
2,000.00
w.
5.00
x.
300.00
September
y.
320.00
z.
75.00
aa.
200.00
October
ab.
425.00
ac.
275.00
ad.
75.00
ae.
77.89
November
af.
450.00
ag.
200.00
December
ah.
70.00
ai.
225.00
Total
aj.
$ 16,390.86
*54 25. During the taxable year ended December 31, 1977, Theodore J. Adams maintained a checking account number XX-X024-0 at the Republic National Bank of Louisiana. 26. During 1977, in each of the following months, the following amounts were deposited into Republic National Bank checking account number XX-X024-0: March
a.
$ 1,541.70
April
b.
2,565.00
c.
100.00
Total
d.
$ 4,206.70
27. During the taxable year ended December 31, 1977, Theodore J. and Judy F. Adams maintained a checking account number XX-XX-X941-1 at the Hibernia National Bank. 28. During 1977, in each of the following months, the following amounts were deposited into Hibernia National Bank checking account number XX-XX-X941-1: May
a.
$     20.00
b.
940.62
June
c.
100.00
d.
300.00
July
e.
1,000.00
f.
991.80
g. 175.00
August
h.
500.00
i.
50.00
j.
422.50
k.
325.00
September
l.
125.00
m.
1,500.00
n.
400.00
o.
500.00
p.
450.00
q.
600.00
r.
200.00
October
s.
200.00
t.
300.00
u.
250.00
v.
615.00
w.
300.00
November
x.
175.00
y.
1,341.62
December
z.
80.00
aa.
1,000.00
Total
ab.
$ 12,861.54
*55 29. During the taxable year ended December 31, 1978, Theodore J. and Judy F. Adams maintained a checking account number XX-XX-X941-1 at the Hibernia National Bank. 30. During 1978, in each of the following months, the following amounts were deposited into Hibernia National Bank checking account number XX-XX-X941-1: January
a.
$  4,070.00
February
b.
322.00
March
c.
1,100.00
April
d.
none  May
e.
450.00
June
f.
1,500.00
July
g.
3,450.00
August
h.
49,739.39
September
i.
none  October
j.
none  November
k.
none  December
m. (sic)
none  Total
$ 60,631.39
31. During the taxable year ended December 31, 1978, petitioner Judy F. Adams maintained a checking account number XXXX-X1-276 at the First National Bank of Commerce. 32. During 1978, in each of the following months, the following amounts were deposited into First National Bank of Commerce checking account number XXXX-X1-276: January
a.
$    600.00
February
b.
2,065.00
March
c.
985.00
April
d.
1,265.00
May
e.
775.00
June
f.
772.04
July
g.
1,602.24
August
h.
2,010.00
September
i.
1,155.00
October
j.
9,470.00
November
k.
1,375.00
December
l.
2,769.89
Total
m.
$ 24,844.17
*56 33. During the taxable year ended December 31, 1979, Theodore J. and Judy F. Adams maintained a checking account number XX-X941-1 at the Hibernia National Bank. 34. During 1979, in each of the following months, the following amounts were deposited into Hibernia National Bank checking account number XX-XX-X941-1: January
a.
none  February
b.
$    260.00
c.
2,085.05
d.
2,000.00
March
e.
350.00
f.
100.00
g.
700.00
h.
1,420.50
April
i.
100.00
j.
500.00
k.
2,300.00
l.
150.00
m.
500.00
n.
300.00
May
o.
300.00
p.
960.38
q.
150.00
r.
600.00
June
s.
3,315.00
t.
750.00
July
u.
1,433.70
v.
880.35
August
w.
none  September
x.
50.00
y.
75.00
October
z.
200.00
November
aa.
200.00
ab.
300.00
ac.
300.00
ad.
300.00
ae.
300.00
December
af.
none  Total
ag.
$ 20,879.98
35. During the taxable year ended December 31, 1979, petitioner, Judy F. Adams, maintained a checking account number XXX X99 0 at the Metairie Bank and Trust Company. 36. During 1979, in each of the following months, the following amounts were deposited into Metairie Bank and Trust *57 Company checking account number XXX X99 0: January
a.
none  February
b.
none  March
c.
none  April
d.
none  May
e.
none  June
f.
none  July
g.
$   500.00
August
h.
none  September
i.
150.00
j.
600.00
k.
150.00
l.
18.00
m.
1,600.00
October
n.
306.00
o.
235.00
p.
410.00
q.
70.00
r.
50.00
s.
725.00
November
t.
800.00
u.
50.00
v.
150.00
w.
50.00
December
x.
900.00
y.
50.00
z.
500.00
Total
aa.
$ 8,064.00
37. During the taxable year ended December 31, 1979, Theodore J. Adams maintained a checking account number XX X22 2 at the Metairie Bank and Trust in the name of Delta Construction Company. 38. During 1979, in each of the following months, the following amounts were deposited into Metairie Bank and Trust checking account number XX X22 2: January
a.
none  February
b.
none  March
c.
none  April
d.
none  May
e.
none  June
f.
none  July
g.
none  August
h.
$  6,976.32
i.
2,054.14
j.
2,347.60
k.
1,000.00
l.
908.90
September
m.
1,698.80
n.
1,396.00
o.
1,864.00
p.
1,000.00
q.
400.00
October
r.
50.00
s.
375.00
t.
435.00
November
u.
none  December
v.
15.00
w.
20.00
Total
x.
$ 22,093.46
*58 39. In the taxable year ended December 31, 1977, petitioner and Theodore J. Adams received a loan or loans in total amount of $ 8,650.00 from Mr. and Mrs. T. J. Adams, Sr.; said loan or loans were the only loans received by petitioner and her husband during the taxable year ended December 31, 1977. 40. In the taxable year ended December 31, 1978, petitioner and Theodore J. Adams received a loan or loans in total amount of $ 6,500.00 from Mr. and Mrs. T. J. Adams, Sr. 41. In the taxable year ended December 31, 1978, petitioner and Theodore J. Adams received a loan or loans in net amount to them of $ 49,100.00 from Citizens Homestead Association. 42. In the taxable year ended December 31, 1978, petitioner and Theodore J. Adams received no loan or loans other than those specified in requests numbered 40 and 41. 43. In the taxable year ended December 31, 1979, petitioner nor Theodore J. Adams received no loan or loans from any source. 44. In the taxable years ended December 31, 1977, December 31, 1978, and December 31, 1979 petitioner nor Theodore J. Adams received any inheritances. 45. In the taxable years ended December 31, 1977, December 31, 1978, and December 31, 1979, petitioner *59 nor Theodore J. Adams received any gifts of money. 46. In the taxable year ended December 31, 1977, petitioner nor Theodore J. Adams received any non-taxable income from any source other than the loans specified in Request for Admissions numbered 40 (sic). 47. In the taxable year ended December 31, 1978, petitioner nor Theodore J. Adams received any non-taxable income from any source other than the loans specified in Request for Admissions numbered 41 and 42. 48. In the taxable year ended December 31, 1979, petitioner (sic) received any non-taxable income from any source. 49. During the taxable year ended December 31, 1977, petitioner, Judy F. Adams, received payments in total amount of $ 2,845.00 from Apartment Finders, Inc. 50. Of the payments set forth in Request for Admissions numbered 49, none was reported as income on petitioners' income tax return for the taxable year ended December 31, 1977. 51. During the taxable year ended December 31, 1978, petitioner, Judy F. Adams, received payments in total amount of $ 6,695.00 from Apartment Finders, Inc. 52. Of the payments set forth in Request for Admissions numbered 51, none was reported as income on petitioners' *60 income tax return for the taxable year ended December 31, 1978. 53. During the taxable year ended December 31, 1979, petitioner, Judy F. Adams, received payments in total amount of $ 5,538.00 from Apartment Finders, Inc. 54. Of the payments set forth in Request for Admissions numbered 54 (sic), none was reported as income on petitioners' income tax return for the taxable year ended December 31, 1979. 55. Petitioner understated her income tax liability for the taxable year ended December 31, 1977, in the amount of $ 4,514.67. 56. Petitioner understated her income tax liability for the taxable year ended December 31, 1978, in the amount of $ 4,459.74. 57. Petitioner understated her income tax liability for the taxable year ended December 31, 1979, in the amount of $ 4,265.22. 58. The income tax return filed by petitioner for taxable year ended December 31, 1977, was fraudulent with the intent to evade tax. 59. The income tax return filed by petitioner for taxable year ended December 31, 1978, was fraudulent with the intent to evade tax. 60. The income tax return filed by petitioner for taxable year ended December 31, 1979, was fraudulent with the intent to evade *61 tax. 61. All or part of the underpayment of tax required to be shown on the 1977 income tax return of the petitioner is due to fraud. 62. All or part of the underpayment of tax required to be shown on the 1978 income tax return of the petitioner is due to fraud. 63. All or part of the underpayment of tax required to be shown on the 1979 income tax return of the petitioner is due to fraud. 64. During the taxable year ended December 31, 1980, Theodore J. Adams, maintained a checking account number XX-XX-X941-1 at the Hibernia National Bank of Louisiana. 65. The account maintained by Theodore J. Adams, at the Hibernia National Bank of Louisiana bearing number XX-XX-X941-1 was property of the community of acquets and gains existing between the petitioner and Theodore J. Adams at all times during 1980. 66. During 1980, on or about each of the following dates, the following amounts were deposited into Hibernia National Bank of Louisiana checking account number XX-XX-1941 (sic): a.
1/2/80
$    600.00
b.
1/18/80
150.00
c.
2/13/80
6,000.00
d.
3/3/80
300.00
e.
3/17/80
485.00
f.
3/18/80
3,500.00
g.
April
none
h.
May
account closed
i.
Total
$ 11,035.00
*62 67. During the taxable year ended December 31, 1980, Theodore J. Adams, maintained a checking account number XX XX X34 2 at the National American Bank. 68. The account maintained by Theodore J. Adams at the National American Bank bearing number XX XX X34 2 was property of the community of acquets and gains existing between the petitioner and Theodore J. Adams at all times during 1980. 69. During 1980, on or about each of the following dates, the following amounts were deposited into National American Bank checking account number XX XX X34 2: a.
5/21/80
$      50.00
b.
5/27/80
1,500.00
c.
6/9/80
500.00
d.
6/12/80
1,200.00
e.
6/18/80
500.00
f.
6/25/80
1,000.00
g.
6/30/80
250.00
h.
7/9/80
1,800.00
i.
7/10/80
2,000.00
j.
7/24/80
25,376.95
k.
8/15/80
12,500.00
l.
8/15/80
373.86
m.
8/18/80
408.88
n.
9/2/80
12,876.88
o.
9/22/80
12,688.47
p.
10/10/80
12,688.48
q.
10/27/80
3,502.00
r.
10/31/80
5,455.30
s.
11/24/80
3,594.35
t.
12/1/80
250.67
u.
12/3/80
1,000.00
v.
12/3/80
20.00
w.
12/3/80
33.62
x.
12/3/80
40.00
z.
12/3/80
83.13
aa.
12/3/80
161.77
ab.
12/3/80
618.49
ac.
12/4/80
14,861.21
ad.
12/11/80
83.13
ae.
12/12/80
150.00
af.
12/15/80
2,000.00
ag.
12/18/80
5,651.63
ah.
Total
$ 123,294.89
*63 70. During the taxable year ended December 31, 1980, petitioners maintained a savings account at the National American Bank. 71. During 1980, on or about each of the following dates, the following amounts were deposited into the National American Bank savings account referred to in stipulation numbered 70. a.
January
none
b.
February
none
c.
March
none
d.
April
none
e.
5/21/80
$ 14,000.00
f.
6/19/80
3,092.05
g.
6/17/80
24.00
h.
7/9/80
4,248.15
i.
August
none
j.
September
none
k.
October
none
l.
November
none
m.
December
none
n.
Total
$ 21,464.20 72. During the taxable year ended December 31, 1980, petitioner, Judy F. Adams, maintained a checking account number XXX X99 0 at the Metairie Bank and Trust Co.
73. The account maintained by petitioner, Judy F. Adams, at the Metairie Bank and Trust Co. bearing number XXX X99 0 was property of the community of acquets and gains existing between the petitioners at all times during 1980. 74. During 1980, in each of the following months, the following amounts were deposited into Metairie Bank and Trust Co. checking account number XXX X99 0: a.
1/8/80
$    200.00
b.
1/15/80
1,200.00
c.
1/30/80
1,150.00
d.
2/1/80
320.00
e.
2/6/80
60.00
f.
2/11/80
50.00
g.
2/13/80
50.00
h.
2/20/80
50.00
i.
2/21/80
50.00
j.
2/25/80
750.00
k.
2/29/80
1,170.00
l.
3/10/80
100.00
m.
3/17/80
125.00
n.
3/19/80
900.00
o.
4/1/80
986.10
p.
4/7/80
125.00
q.
4/15/80
115.00
r.
4/25/80
1,340.00
s.
4/30/80
900.00
t.
5/2/80
239.00
u.
5/7/80
50.00
v.
5/15/80
24,000.00
w.
5/27/80
1,100.00
x.
6/3/80
975.00
y.
6/9/80
300.00
z.
6/13/80
80.00
aa.
6/26/80
300.00
ab.
7/1/80
1,192.80
ac.
7/11/80
50.00
ad.
7/18/80
90.00
ae.
7/30/80
50.00
af.
7/30/80
550.00
ag.
8/4/80
1,144.00
ah.
8/14/80
7.00
ai.
9/3/80
1,205.00
aj.
9/24/80
260.00
ak.
10/2/80
935.00
al.
10/20/80
200.00
am.
11/3/80
900.00
an.
11/10/80
20.00
ao.
11/18/80
60.00
ap.
11/24/80
250.00
aq.
12/2/80
1,250.00
ar.
12/17/80
100.00
as.
12/30/80
450.00
at.
12/30/80
225.00
au.
Total
$ 45,598.90
*64 75. During the taxable year ended December 31, 1980, Theodore J. Adams, maintained a checking account number XX X22 2 at the Metairie Bank and Trust Co. in the name of Delta Construction Co.
76. The account maintained by Theodore J. Adams at the Metairie Bank and Trust bearing number XX X22 2 was property of the community of acquets and gains existing between the petitioners at all times during 1980. 77. During 1980, on or about each of the following dates, the following amounts were deposited into Metairie Bank and Trust Company checking account number XX X22 2: a.
1/4/80
$ 2,500.00
b.
1/25/80
229.83
c.
1/29/80
3,129.26
d.
2/14/80
500.00
e.
March
none
f.
4/20/80
316.00
g.
May
none
h.
June
none
i.
July
none
j.
August
none
k.
September
none
l.
October
none
m.
November
none
n.
12/17/80 2,000.00
o.
Total $ 8,675.09 78. During the taxable year ended December 31, 1981, Theodore J. Adams maintained a checking account number XX XX X34 2 at the National American Bank. 79. The account maintained by Theodore J. Adams at the National American Bank bearing number XX XX X34 2 was property of the community *65 of acquets and gains existing between the petitioner and Theodore J. Adams at all times during 1981. 80. During 1981, on or about each of the following dates, the following amounts were deposited into National American Bank checking account number XX XX X34 2: a.
January
none  b.
2/16/81
$   5,000.00
c.
2/17/81
10,000.00
d.
3/9/81
1,500.00
e.
3/11/81
1,500.00
f.
3/16/81
1,000.00
g.
3/23/81
2,000.00
h.
3/27/81
5,000.00
i.
4/15/81
1,000.00
j.
4/24/81
4,500.00
k.
5/4/81
4,506.38
l.
5/8/81
887.40
m.
5/22/81
4,939.32
n.
5/22/81
350.00
o.
5/26/81
5,492.50
p.
5/28/81
1,041.00
q.
6/1/81
1,000.00
r.
6/5/81
2,538.61
s.
6/15/81
3,250.00
t.
7/6/81
1,937.00
u.
7/8/81
1,100.00
v.
7/20/81
4,173.05
w.
7/31/81
5,600.00
x.
8/7/81
950.00
y.
8/11/81
3,000.00
z.
8/17/81
1,450.00
aa.
8/18/81
3,793.75
ab.
8/27/81
2,000.00
ac.
9/11/81
4,131.69
ad.
9/18/81
1,000.00
ae.
9/25/81
4,233.50
af.
10/9/81
8,076.33
ag.
10/15/81
500.00
ah.
10/23/81
3,879.70
ai.
10/30/81
5,800.00
aj.
November
none  ak.
12/8/81
7,599.82
al.
12/8/81
2,200.00
am.
12/11/81
6,877.00
an.
12/18/81
11,100.00
ao.
12/23/81
6,896.00
ap.
Total
$ 143,803.05
*66 81. During the taxable year ended December 31, 1981, petitioner, Judy F. Adams, maintained a checking account number XXX X99 0 at the Metairie Bank and Trust Co.
82. The account maintained by petitioner, Judy F. Adams, at the Metairie Bank and Trust Co. bearing account number XXX X99 0 was property of the community of acquets and gains existing between her and Theodore J. Adams at all times during 1981. 83. During 1981, on or about each of the following dates, the following amounts were deposited into Metairie Bank and Trust Co. checking account number XXX X99 0: a.
1/5/81
$    800.00
b.
1/14/81
50.00
c.
2/3/81
1,345.50
d.
2/6/81
100.00
e.
2/17/81
200.00
f.
3/2/81
880.00
g.
3/25/81
50.00
h.
3/30/81
150.00
i.
4/1/81
1,150.00
j.
4/22/81
300.00
k.
4/24/81
925.00
l.
4/30/81
860.00
m.
5/5/81
50.00
n.
5/7/81
200.00
o.
5/11/81
100.00
p.
5/19/81
75.00
q.
5/22/81
1,100.00
r.
5/27/81
30.00
s.
5/27/81
76.00
t.
6/1/81
950.00
u.
6/5/81
300.00
v.
6/22/81
400.00
w.
6/25/81
50.00
x.
7/1/81
1,359.86
y.
8/3/81
1,155.00
z.
9/2/81
605.00
aa.
9/8/81
100.00
ab.
10/1/81
1,130.00
ac.
11/3/81
950.00
ad.
11/9/81
75.00
ae.
11/23/81
100.00
af.
12/1/81
1,250.00
ag.
12/9/81
91.25
ah.
12/11/81
200.00
ai.
12/17/81
100.00
aj.
12/23/81
550.00
ak.
12/23/81
450.00
al.
12/13/81
225.00
am.
Total
$ 18,464.61
*67 84. On November 23, 1981, Theodore J. Adams, received payment in the amount of $ 5,975.00 from West End Associates, a partnership. 85. The payment referred to in stipulation numbered 85 (sic) was not deposited into any bank account maintained by either petitioner. 86. On November 30, 1981, Theodore J. Adams, received payment in the amount of $ 6,596.00 from West End Associates, a partnership. 87. The payment referred to in Request For Admission numbered 87 (sic) was not deposited into any bank account maintained by petitioner. 88. On November 30, 1981, Theodore J. Adams, received payment in the amount of $ 3,838.00 from West End Associates, a partnership. 89. The payment referred to in Request For Admissions number 89 (sic) was not deposited into any bank account maintained by petitioner or Theodore J. Adams. 90. On November 30, 1981, Theodore J. Adams, received payment in the amount of $ 2,200.00 from West End Associates, a partnership. 91. The payment referred to in Request for Admissions numbered 91 (sic) was not deposited into any bank account maintained by petitioner or Theodore J. Adams. 92. The income referred to in Request for Admissions numbered *68 85, 87, 89, and 91 is part of the community of acquets and gains existing between petitioner and Theodore J. Adams. 93. During the taxable year ended December 31, 1982, Theodore J. Adams, maintained a checking account number XX XX X34 2 at the National American Bank. 94. The account maintained by Theodore J. Adams, at the National American Bank bearing number XX XX X34 2 was property of the community of acquets and gains existing between the petitioner and Theodore J. Adams at all times during 1982. 95. During 1982, on or about each of the following dates, the following amounts were deposited into National American Bank checking account number XX XX X34 2: a.
1/7/82
$   1,292.34
b.
1/8/82
5,580.07
c.
1/19/82
975.00
d.
1/22/82
10,565.16
e.
1/29/82
3,264.84
f.
2/5/82
3,615.11
g.
2/8/82
1,512.50
h.
2/12/82
4,962.50
i.
2/15/82
550.00
j.
2/19/82
5,271.00
k.
2/26/82
5,091.62
l.
3/5/82
5,850.00
m.
3/17/82
6,230.32
n.
3/22/82
1,600.00
o.
3/22/82
3,240.90
p.
3/26/82
4,212.00
q.
4/2/82
5,586.98
r.
4/9/82
6,721.54
s.
4/12/82
1,775.00
t.
4/20/82
3,314.07
u.
4/23/82
7.00
v.
4/23/82
8,492.27
w.
4/26/82
145.00
x.
5/3/82
9,841.85
y.
5/5/82
3,000.00
z.
5/7/82
3,557.49
aa.
5/17/82
2,963.00
ab.
5/21/82
3,605.11
ac.
5/27/82
583.98
ad.
5/28/82
1,292.34
ae.
5/28/82
1,462.00
af.
6/8/82
1,600.00
ag.
6/8/82
2,000.00
ah.
6/17/82
2,000.00
ai.
6/24/82
600.00
aj.
7/9/82
10,000.00
ak.
7/26/82
268.50
al.
7/26/82
1,050.00
am.
8/2/82
200.00
an.
8/3/82
600.00
ao.
8/17/82 5,160.00
ap.
8/19/82
6,556.27
aq.
8/26/82
2,100.75
ar.
8/27/82
1,500.00
as.
9/10/82
550.00
at.
9/15/82
125.00
au.
9/16/82
598.04
av.
9/17/82
1,199.06
aw.
9/21/82
965.00
ax.
10/5/82
1,825.00
ay.
10/12/82
725.00
az.
10/26/82
1,192.00
ba.
10/28/82
1,292.34
bb.
11/2/82
600.00
bc.
11/6/82
1,200.00
bd.
11/8/82
575.00
be.
12/1/82
4,225.00
bf.
12/6/82
800.00
bg.
12/20/82
200.00
bh.
12/21/82
307.51
bi.
12/23/82
687.50
bj.
12/28/82
2,000.00
bk.
Total
$ 168,862.81
*69 96. During the taxable year ended December 31, 1982, petitioner, Judy F. Adams, maintained a checking account number 201 699 0 at the Metairie Bank and Trust Co.
97. The account maintained by petitioner, Judy F. Adams, at the Metairie Bank and Trust Company was property of the community of acquets and gains existing between her and Theodore J. Adams. 98. During 1982, in each of the following months, the following amounts were deposited into Metairie Bank and Trust Co. checking account number XXX X99 0: a.
1/7/82
$    220.00
b.
1/18/82
75.00
c.
1/22/82
75.00
d.
1/29/82
75.00
e.
2/1/82
1,150.00
f.
2/11/82
75.00
g.
2/17/82
50.00
h.
2/19/82
50.00
i.
3/1/82
950.00
j.
3/5/82
50.00
k.
3/16/82
650.00
l.
3/22/82
100.00
m.
3/25/82
100.00
n.
3/25/82
50.00
o.
4/2/82
900.00
p.
4/6/82
100.00
q.
4/9/82
100.00
r.
4/13/82
100.00
s.
4/22/82
75.00
t.
4/28/82
50.00
u.
4/30/82
100.00
v.
5/3/82
2,172.50
w.
5/5/82
150.00
x.
5/12/82
150.00
y.
5/19/82
75.00
z.
5/24/82
50.00
aa.
5/25/82
1,090.00
ab.
6/3/82
300.00
ac.
6/7/82
50.00
ad.
6/8/82
100.00
ae.
6/10/82
300.00
af.
6/15/82
100.00
ag.
6/17/82
100.00
ah.
6/21/82
10.00
ai.
6/22/82
300.00
aj.
7/2/82
1,732.68
ak.
7/12/82
150.00
al.
7/15/82
25.00
am.
7/19/82
150.00
an.
7/27/82
50.00
ao.
7/29/82
1,210.00
ap.
8/6/82
100.00
aq.
8/19/82
50.00
ar.
9/2/82
1,161.47
as.
9/7/82
9,000.00
at.
9/27/82
262.00
au.
10/1/82
1,325.00
av.
10/8/82
500.00
aw.
10/19/82
4,000.00
ax.
11/2/82
830.00
ay.
11/29/82
4,000.00
az.
11/30/82
500.00
ba.
12/28/82
450.00
bb.
12/31/82
200.00
bc.
Total
$ 35,738.65
*70 99. Attached hereto and marked as Exhibit J are true and correct copies of forms 1099, Statement for receipt of nonemployee income, for taxable years ended December 31, 1979, 1980, 1981, and 1982, prepared by or on behalf of Apartment Finders, Inc. pertaining to payments received by petitioner, Judy F. Adams. 100. Petitioner, Judy F. Adams, received as income the amounts set forth on the forms 1099 referred to in Request for Admissions numbered 100 (sic). 101. Petitioner, Judy F. Adams, received the forms 1099 referred to in Request for Admissions numbered 100 (sic). 102. Attached hereto as Exhibit K is a true and correct copy of an escrow account statement maintained by Community Improvement Agency pertaining to property located at 1518-20 Melpomene. 103. All income earned by Delta Construction Company was property of the community of acquets and gains existing between the petitioner and Theodore J. Adams. 104. Petitioner, through Delta Construction Company, received the following amounts through Community Improvement Agency by checks dated with the following dates: a.
7/24/80
$ 25,376.95
b.
8/15/80
12,500.00
c.
8/28/80
12,876.95
d.
9/22/80
12,688.47
e.
10/9/80
12,688.48
f.
11/20/80
3,594.35
g.
11/25/80
14,861.21
h.
12/11/80
2,200.00
i.
12/11/80
7,599.82
j.
1/21/81
9,883.97
*71 105. Attached hereto as in globo (sic) Exhibit L are true and correct copies of escrow payment authorizations maintained by First Homestead & Savings Association pertaining to property located at 6325 West End Blvd. 106. Theodore J. Adams through Delta Construction Company, received the following amounts by payments authorized on the following dates: a.
11/20/81
$  1,000.00
b.
11/20/81
4,975.00
c.
11/23/81
4,975.00
d.
11/23/81
1,621.00
e.
11/30/81
750.00
f.
11/30/81
1,410.00
g.
11/30/81
1,500.00
h.
11/30/81
118.00
i.
11/30/81
2,200.00
j.
12/8/81
2,200.00
k.
12/8/81
7,599.82
l.
12/11/81
1,800.00
m.
12/11/81
7,800.00
n.
12/17/81
2,200.00
o.
12/17/81
8,900.00
p.
12/23/81
5,275.00
q.
12/23/81
1,621.00
r.
1/8/82
384.25
s.
1/8/82
725.00
t.
1/8/82
730.00
u.
1/8/82
2,240.82
v.
1/8/82
1,500.00
w.
1/22/82
232.52
x.
1/22/82
273.00
y.
1/22/82
1,213.38
z.
1/22/82
75.25
aa.
1/22/82
1,850.00
ab.
1/22/82
1,621.00
ac.
1/22/82
1,875.00
ac. (sic)
1/22/82
1,000.00
ad.
1/22/82
2,425.00
ae.
1/29/82
234.46
af.
1/29/82
500.00
ag.
1/29/82 500.00
ah.
1/29/82
625.00
ai.
1/29/82
1,075.00
aj.
1/29/82
330.00
ak.
2/8/82
450.00
al.
2/8/82
750.00
am.
2/8/82
94.41
an.
2/8/82
1,648.00
ao.
2/8/82
210.00
ap.
2/8/82
250.00
aq.
2/8/82
900.00
ar.
2/8/82 288.52
as.
2/8/82
24.18
at.
2/8/82
94.41
au.
2/12/82
2,000.00
av.
2/12/82
475.00
aw.
2/12/82
500.00
ax.
2/12/82
880.00
ay.
2/12/82
700.00
az.
2/12/82
247.00
ba.
2/12/82
160.50
bb.
2/19/82
250.00
bc.
2/19/82
265.00
bc. (sic)
2/19/82
1,621.00
bd.
2/19/82
2,425.00
be.
2/19/82
635.00
bf.
2/19/82
2,500.00
bg.
2/26/82
750.00
bh.
2/26/82
2,625.00
bi.
2/26/82
1,595.00
bj.
2/26/82
121.62
bk.
3/5/82
1,000.00
bl.
3/5/82
2,000.00
bm.
3/5/82
1,450.00
bb. (sic)
3/5/82
200.00
bo.
3/16/82
435.00
bp.
3/16/82
645.32
bb. (sic)
3/16/82
600.00
br.
3/16/82
425.00
bs.
3/16/82
1,200.00
bt.
3/16/82
1,625.00
bu.
3/16/82
750.00
bv.
3/19/82
1,600.00
bw.
3/19/82
1,576.00
bx.
3/19/82
1,621.00
by.
3/19/82
43.90
bz.
3/26/82
400.00
ca.
3/26/82
420.00
cb.
3/26/82
350.00
cc.
3/26/82
875.00
cc. (sic)
3/26/82
2,167.00
cd.
4/2/82
353.10
ce.
4/2/82
950.00
cf.
4/2/82
1,540.00
cg.
4/2/82
273.85
ch.
4/2/82
1,055.03
ci.
4/2/82
1,000.00
cj.
4/2/82
415.00
ck.
4/9/82
634.67
cl.
4/9/82
200.00
cm.
4/9/82
200.00
cb. (sic)
4/9/82
1,005.00
co.
4/9/82
1,600.00
cp.
4/9/82
700.00
cq.
4/9/82
2,206.87
cr.
4/9/82
175.00
cs.
4/20/82
107.00
ct.
4/20/82
58.80
cu.
4/20/82
391.27
cv.
4/20/82
1,557.00
cw.
4/20/82
800.00
cx.
4/20/82
400.00
cy.
4/23/82
2,529.27
cz.
4/23/82
1,314.00
da.
4/23/82
160.00
db.
4/23/82
350.00
dc.
4/23/82
1,050.00
dc. (sic)
4/23/82
175.00
dd.
4/23/82
650.10
de.
4/23/82
1,000.00
df.
4/23/82
1,621.00
dg.
4/27/82
265.00
dh.
4/27/82
250.03
di.
4/27/82
184.80
dj.
4/27/82
468.19
dk.
4/27/82
750.00
dl.
4/27/82
1,500.00
dm.
4/27/82
1,990.00
db. (sic)
4/27/82
180.00
do.
4/27/82
4,253.86
dp.
5/7/82
2,211.00
dq.
5/7/82
870.00
dr.
5/7/82
476.49
ds.
5/14/82
200.00
dt.
5/14/82
250.00
du.
5/14/82
750.00
dv.
5/14/82
1,663.00
dw.
5/21/82
1,738.00
dx.
5/21/82
214.00
dy.
5/21/82
765.00
dz.
5/21/82
48.76
ea.
5/21/82
834.32
eb.
5/28/82
1,412.00
ec.
5/28/82
50.00
ec. (sic)
6/17/82
2,000.00
ed.
8/19/82
6,556.27
ee.
8/27/82
1,500.00
*72 107. In the taxable year ended December 31, 1980, petitioner or Theodore J. Adams received the following amounts on the following dates as loans from the mother of petitioner, Judy F. Adams: a.
1/4/80
$  2,500.00
b.
1/29/80
3,000.00
c.
5/15/80
24,000.00
d.
Total
$ 29,500.00
108. The amounts set forth in Request for Admissions numbered 107 represents all loans made to petitioner and/or Theodore J. Adams by the mother of petitioner, Judy F. Adams, during the taxable year ended December 31, 1980. 109. The loans set forth in Request for Admissions numbered 107 are obligations of the community of acquets and gains which exists between the petitioner and Theodore J. Adams. 110. In the taxable year ended December 31, 1980, petitioner and Theodore J. Adams received the following amounts on the following dates as loans from French Market Homestead Association: a.
7/9/80
$  1,800.00
b.
10/31/80
5,455.30
c.
12/18/80
5,651.63
d.
Total
$ 12,906.93
111. The amounts set forth in Request for Admissions numbered 111 (sic) represents all loans made to petitioner and Theodore J. Adams by French Market Homestead Association *73 during the taxable year ended December 31, 1980. 112. The loans set forth in Request for Admissions numbered 108 (sic) and 111 (sic) are the only loans received by petitioner and Theodore J. Adams from any source during the taxable year ended December 31, 1980. 113. During the taxable year ended December 31, 1980, the following transfers of funds were made from Hibernia Account number XX-XX-X941-1 maintained by Theodore J. Adams, to Metairie Bank Account number 201 699 0 maintained by petitioner, Judy F. Adams: a.
2/20/80
$    50.00
b.
2/25/80
750.00
c.
2/29/80
300.00
d.
3/10/80
100.00
e.
3/19/80
900.00
f.
4/1/80
300.00
g.
Total
$ 2,400.00
114. Other than the loans set forth in stipulation numbered 108 (sic) and 111 (sic) and the transfers set forth in requests numbered 113, no non-taxable deposits were made into any account maintained by Theodore J. Adams during the taxable year ended December 31, 1980. 115. In the taxable year ended December 31, 1981, petitioner or Theodore J. Adams received the following amounts on the following dates as loans from French Market Homestead Association: a.
5/4/81
$ 4,506.38
b.
5/8/81
887.40
c.
5/22/81
4,939.32
d.
6/5/81
2,538.61
e.
6/15/81
3,250.00
f.
7/6/81
1,397.00
g.
7/31/81
5,600.00
f. (sic)
8/18/81
3,793.75
i.
9/11/81
4,131.69
j.
9/25/81
4,233.50
k.
10/9/81
8,076.33
l.
10/23/81
3,879.70
*74 116. No loans other than those set forth in Request for Admissions numbered 115 were made to petitioner or Theodore J. Adams during the taxable year ended December 31, 1981. 117. In the taxable year ended December 31, 1982, petitioner nor Theodore J. Adams received no loan or loans from any source. 118. In the taxable year ended December 31, 1982, there were no transfers of funds between bank accounts maintained by or on behalf of petitioner or Theodore J. Adams. 119. In the taxable year ended December 31, 1982, petitioner nor Theodore J. Adams made any deposit of non-taxable income into any banking account maintained by them either jointly or individually. 120. In the taxable years ended December 31, 1980, December 31, 1981, and December 31, 1982, petitioner nor Theodore J. Adams received any inheritances. [121.] 122. In the taxable years ended December 31, 1980, December 31, 1981, and December 31, 1982, petitioner nor Theodore J. Adams received any gifts of money. 123. As of December 31, 1979, petitioner's cash on hand was not in excess of $ 50. 124. Petitioner and Theodore J. Adams owned property bearing municipal number *75 110 Holly Street, Metairie, Louisiana. 125. Petitioner and Theodore J. Adams owned property bearing municipal number 3942 Laurel Street, New Orleans, Louisiana during the period December 31, 1979, through December 31, 1982; said property was property of the community of acquets and gains existing between petitioner and Theodore J. Adams during said period. 126. The property bearing municipal number 3942 Laurel Street was formerly a movie theatre which was renovated and converted to use as residential apartments by petitioner and Theodore J. Adams. 127. The property bearing municipal number 3942 Laurel Street was put into service as a residential apartment building during 1982. 128. During the taxable year ended December 31, 1982, petitioner's cost basis in the property bearing municipal number 3942 Laurel Street was $ 200,000.00. 129. Petitioner's basis in the property bearing municipal number 3942 Laurel Street is properly allocated as follows: building and improvements: $ 160,000.00; land: $ 40,000.00. 130. The property bearing municipal number 3942 Laurel Street generated rental income in the following amounts during the taxable year ended *76 December 31, 1982: a.
Campbell lease
$  6,075.00
b.
Viennie lease
5,850.00
c.
Hurley lease
1,800.00
d.
Unganst lease
4,050.00
e.
Kincaid lease
7,800.00
f.
Total
$ 25,575.00
131. In addition to the rental income specified in Request for Admissions numbered 130, petitioner also received $ 2,950.00 as total security deposits for apartments at the property bearing municipal number 3942 Laurel Street during the taxable year ended December 31, 1982. 132. Petitioner nor Theodore J. Adams owned any real property other than the property bearing municipal number 110 Holly Street, Metairie, Louisiana, and the property bearing municipal number 3942 Laurel Street, New Orleans, Louisiana, during the period December 31, 1976 to December 31, 1982. 133. The property bearing municipal number 3942 Laurel Street is not a "certified historic structure" nor is it a "qualified rehabilitated building" within the meaning of I.R.C. § 48(g). 134. At all times from December 31, 1979, until December 31, 1982, Theodore J. Adams, was the sole proprietor of Delta Construction Company. 135. On or about October 23, 1981, petitioner, *77 Theodore J. Adams, d/b/a Delta Construction Co., entered into a contract to provide construction services to West End Associates, a Louisiana Partnership. 136. The contract price of the contract referred in Request for Admissions numbered 135 was $ 243,908.00. 137. The contract referred in Request for Admissions numbered 135 was completed on or before March 11, 1983. 138. The contract price referred to Request for Admissions numbered 135 was paid in full as work was completed throughout the term of the contract. 139. Petitioner, Judy F. Adams, understated her income tax liability for the taxable year ended December 31, 1980, in the amount of $ 26,773.60 140. Petitioner, Judy F. Adams, understated her income tax liability for the taxable year ended December 31, 1981, in the amount of $ 17,751.00 141. Petitioner, Judy F. Adams, understated her income tax liability for the taxable year ended December 31, 1982, in the amount of $ 27,341.00. 142. The failure of petitioner, Judy F. Adams to file form 1040 U.S. Individual Income Tax return for taxable year ended December 31, 1980, was fraudulent with the intent to evade tax. 143. The *78 failure of petitioner, Judy F. Adams to file form 1040 U.S. Individual Income Tax return for taxable year ended December 31, 1981, was fraudulent with the intent to evade tax. 144. The failure of petitioner, Judy F. Adams to file form 1040 U.S. Individual Income Tax return for taxable year ended December 31, 1982, was fraudulent with the intent to evade tax. 145. All or part of the underpayment of tax required to be shown on the 1980 income tax return of the petitioner, Judy F. Adams, is due to fraud. 146. All or part of the underpayment of tax required to be shown on the 1981 income tax return of the petitioner, Judy F. Adams, is due to fraud. 147. All or part of the underpayment of tax required to be shown on the 1982 income tax return of the petitioner, Judy F. Adams, is due to fraud. Footnotes
1. On March 23, 1988, this Court granted respondent's motion to consolidate the cases at docket Nos. 42257-86 and 42258-86 with the case at docket No. 42256-86 for trial, briefing and opinion. By order dated July 27, 1988, this Court severed docket No. 42258-86 from the above-docketed consolidated group of cases.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. In one part of respondent's notice of deficiency for taxable years 1980 through 1982, respondent incorrectly stated that the additions to tax under section 6653(b)(2) were equal to 50 percent of the interest due on $ 20,513.10 for taxable year 1981, and 50 percent of the interest due on $ 30,370.40 for taxable year 1982. The additions to tax under section 6653(b)(2), however, only apply to taxes the last day prescribed by law for payment of which (determined without regard to any extension) is after the date of enactment of the Tax Equity and Fiscal Responsibility Act of 1982. Sec. 325(b), TEFRA, Pub. L. 97-248, 96 Stat. 324, 617. The Tax Equity and Fiscal Responsibility Act was signed into law by President Ronald Reagan on September 3, 1982. In the instant case, therefore, the additions to tax under section 6653(b)(2) do not apply to petitioner's 1981 taxable year. The deficiency notice and attachments indicate that respondent properly determined the additions to tax under section 6653(b) for taxable year 1981, and under sections 6653(b)(1) and (2)↩ for taxable year 1982.
4. The petition found at docket No. 42256-86 was originally filed by petitioner and her husband, Theodore J. Adams. Mr. Adams was subsequently dismissed from this case for lack of jurisdiction. Adams v. Commissioner, T.C. Memo. 1988-317↩.
5. Because we have granted respondent's motion for summary judgment, respondent's motion to impose sanctions is denied.↩